The Honorable, the Judgement of the United States Court of Appeals in the Fourth Circuit. Oyez, oyez, oyez, all persons having any name or form of business before the Honorable United States Court of Appeals in the Fourth Circuit are admonished to draw an eye and give their attention to the court of non-sitting. I now say the United States and the Honorable Court. Please be seated. While we prepare to hear our first case, Suri v. Trump and Mr. Ensign. Good morning. May it please the court, Drew Ensign, Deputy Assistant Attorney General for the United States. I'd like to reserve four minutes for rebuttal. Considering a similar challenge five years ago in the Tazu case, the Third Circuit explained that in law as in life, the path often matters as much as the destination. For an alien challenging his removal, that path begins with a petition for review of its removal order, not a habeas petition, end quote. But habeas is the path the petitioner has chosen here, and the district court indulged that unlawful detour by granting habeas relief. The illegality of that path is underscored by the Third Circuit's recent decision in Khalil, which reiterated that equivalent claims must be raised to circuit courts through the PFR process and not to district courts through habeas. I guess we already have a, regardless of what we do, we already have a circuit conflict between the Third Circuit and the Second Circuit. Not necessarily, Your Honor. The Second Circuit decision was only a state decision. The case has been heard on the merits with a different panel. We're still waiting a decision on that, but I expect there is a very good chance that the Second Circuit may align itself with the Third Circuit. And so there would only be a circuit split here if this court were to affirm rather than to reverse. And speaking of circuit splits, this court would have to create a square one as well with the Eleventh Circuit on subsection 1252G in order to affirm here. As the Eleventh Circuit explained in the Alvarez case, quote, securing an alien while awaiting his removal hearing constitutes an action taken to commence proceedings, end quote. And that's the Alvarez case. And that squarely holds that detaining an alien while conducting removal hearings falls squarely within the 1252G bar. As well, the Third Circuit decision in the Tazu case is very instructive on this, where just like here, all of the claims parallel challenge both removal and detention on the very same grounds. And there, the Third Circuit recognized that both the 1252G and the 1252B9 and A5 bars applied. Counsel, can I ask you about some of our cases? I guess I'll start with the Massawi case, which I think you don't address in your brief. But on this question about habeas jurisdiction, I understand one of your arguments to be that there's really no such thing as the unknown custodian exception. But we did recognize that exception in Massawi. And I guess I want to give you a chance if you have anything to say about our case law on that. Certainly, Your Honor. As to that, I think this Court has not said anything inconsistent with the D.C. Circuit's decision in the Demandjik case and how the Supreme Court viewed – well, not the Supreme Court, rather, the Kennedy concurrence in the Bestia case. And so the unknown custodian exception only has application so long as the actual custodian is unknown. Once the custodian becomes known, then it has no more work to do, and that is the court where habeas is done. And so I think the Third Circuit's resolution of this in the Khalil case is very instructive. The way that it looked at it was, you know, even if you think that the custodian was unknown when Mr. Khalil filed his suit – I mean, even if we think that, do you think the custodian was known when he filed his suit? Almost, Your Honor. It's a little – this case has somewhat unusual facts because he was served with an NTA. The NTA specifically gave his place of detention as Texas in, I believe, the Prairieland facility. But he wasn't in Texas. What's that? But he wasn't in Texas. He wasn't yet. And so there was a transit time that makes the question a little more unusual in that he had actual notice of where he was going. And, you know, if he had filed two days later, that would have been absolutely where he was. He filed earlier than that. But, again, I think the Third Circuit's resolution of this in Khalil is very instructive. Can I follow up on the good question that Judge Harris raised? I think there probably is, under a Mussolini case, an unknown custodian exception. And the district court made some factual findings pursuant to that which aren't favorable to you. But I'm not sure that we need to get into that or we could say it exists because, as I understand it, that's the unknown custodian question is really a matter of venue or personal jurisdiction. And the jurisdiction stripping provisions in 1252G or 1252B9 are subject matter jurisdiction points. And I'm wondering why the subject matter jurisdictional provisions in the jurisdictional stripping statute wouldn't take priority in terms of our consideration over the personal jurisdiction questions that are implicated by the unknown custodian rule. Because if the jurisdiction stripping statutes under 1252 apply here, that would make unnecessary the getting into the unknown custodial rule? So three responses, Your Honor, if you'll indulge me. First of all, we absolutely agree that the INA jurisdictional bars are a fully sufficient basis to resolve this case. And you can do so alone and not need to reach the habeas issues. Second, as to order of operations, I think this court actually has discretion as to how it wants to reach that. The Supreme Court's decision in Marathon Oil is instructive on this, or it recognized that you can reach non-merits questions. The key problem that is hypothetical— All I'm suggesting to you is that it seems to me we need to, as a threshold matter, get into 1252G and 1252B9, that those come first. And if there's no jurisdiction under those statutes, I'm just not certain why that doesn't make resolution of the other questions unnecessary. It certainly renders them unnecessary. I think under Marathon Oil you would have discretion in terms of what order, but we absolutely agree that reaching the INA jurisdictional bars first makes sense. They're much more straightforward. And can I ask you about some of our Fourth Circuit cases under B9, if I may? So we have a couple of cases saying that that provision applies only to review of a final order of removal. And your brief, and I appreciated the candor, says that the Supreme Court has not addressed this subject directly. So if I put together our cases saying it only applies to review of a final order of removal, plus the fact that the Supreme Court hasn't addressed it directly, why am I not bound by my circuit case law? Your Honor, a couple different responses to that. I think the Johnson case is instructive on this, where this Court affirmed a dismissal under B9 where there had not been a final order of removal at the time that this Court dismissed it. And in so doing, I think this Court recognized that B9 does not require a final order of removal. I think while the Supreme Court may not have had a square holding on this, putting together the opinions under United States v. Marx, it's very clear that B9 actually, as read by five justices, does not require a final order of removal. And so let me explain that, and then the Third Circuit recently held as much. Well, I understand, but we do have these cases that just say it. And we take circuit precedent pretty seriously. And I understand your argument about Jennings, and if you put together the plurality and all the opinions, you get at least maybe some suggestions to the contrary, but we don't usually say our precedent has been superseded until the Supreme Court kind of directly confronts the question. So that's what I'm hoping you can address. Certainly. So I think in the Khalil case, the Third Circuit recognized that it did have some Third Circuit precedent that said B9 does not apply without a final order of removal. And it's Chagas or something very close to that. Forgive me for not remembering the name. They said that that prior precedent was so clearly irreconcilable with Jennings itself that they overruled it. And so they recognized that under the rule of Marx, that Jennings, in fact, you know, displaces contrary precedent. I also think this court's precedent is not necessarily so clear. I think you have the Johnson case, which does apply the B9 bar in an absence of any final order of removal at the time. I don't understand Johnson. Johnson put it rather plainly and prohibited habeas petitions as a way to obtain review of questions arising in removal proceedings. And that's the Johnson case seems a precedent that's pretty close on point. I certainly agree, Your Honor. There the issue was one, as Your Honor described, that absolutely can and was raised in the PFR. There the petitioner was arguing that they were a citizen, and that's obviously a bar to remove. It's perfectly clear that we do take our precedent very seriously. And I thought that the Johnson case was pretty close on point. I certainly agree, Your Honor. And, you know, as well, even aside from A5 and B9, you have the 1252G bar, which, as the Eleventh Circuit in Alvarez and the Third Circuit in Tazi have recognized, would bar the very sorts of claims that are at issue there. I guess I'm, and I guess follow up to Judge Harris, I still don't understand how you get around CASA de Maryland and Miranda v. Garland. I mean, this circuit has clearly spoke on those, in those two cases regarding this issue. So two responses. Let me take them one at a time, if I may. So CASA involved a programmatic challenge under the APA. It was not a challenge to any particular removal order. It did not implicate any sort of proceedings before an IJ. Instead was a very typical APA programmatic challenge. Those are not the sort of challenges that are barred under the A5 and B9 bar. And, indeed, the, and Miranda was separately a case about bond proceedings. That's not challenging detention itself. It's challenging whether or not there is an availability of bond before an IJ. The third circumcision in Khalil explained very clearly why they thought that that case law did not control. They accepted it. You know, they didn't try to say we're splitting with you. They said that Miranda actually does not hold that B9 would cover a claim like Mr. Khalil's or here, Mr. Surry's. And if I may circle. I'm going to take a larger view of this because I think what we really want to understand is what did Congress really mean to achieve by these jurisdiction stripping provisions? And the way that I looked at it was that the government here has an option as to whether it wishes to proceed by way of criminal prosecution of an individual or by way of deportation. And it seemed to me that the jurisdictional provisions in Title VIII were designed to avoid duplication of removal proceedings and habeas proceedings. Each has its own realm. There's a definite role for habeas proceedings if there's a prosecution involved in a post-conviction attack on the prosecution. But what Congress, it seemed to me, wanted to do was to avoid having the immigration proceedings and the habeas proceedings running into each other where they were duplicating each other and conceivably producing opposite rulings on the very same questions. And there's a whole immigration process of this country could get involved in a very serious tangle if you say that the immigration proceedings and the habeas proceedings can go forward simultaneously on the same claim. That you really are getting into not only delay but all kinds of contradictory rulings and everything that puts the immigration process in a perfect snarl. We certainly agree, Your Honor. And particularly as to A5 and B9, that is absolutely Congress's intent. As the Supreme Court described it in Reno v. AADC, they described it as an unmistakable zipper clause that essentially zips up everything through the PFR process. And we think the Third Circuit has a really good sort of explanation of this as well in the Khalil case where essentially the guiding principle is if you can raise it in the PFR, or sorry, if you can raise it before an IJ and it can ultimately be heard by a circuit court through a PFR, then that's how it must be raised. And only if it would be impossible for it to be there is it something that's outside the zipper clause and almost by definition. So if it can be heard there, it absolutely must be. That's what the Third Circuit held in the Khalil case. And I point to the Ozturk case as well where notably Ms. Ozturk actually did raise these arguments before an IJ and prevailed. And so, I mean, it's currently on appeal to the BIA, but these are precisely the sort of arguments. So let me ask you that. So if I were to agree with you, then what happens when a removal order is never issued? So he's detained and a removal order is never issued because you're saying that the district court did not have jurisdiction over the habeas jurisdiction. What happens in that case? It somewhat depends on the hypothetical. But if there ultimately is no removal order, then Mr. Suri would have won, and your victory means you don't get to appeal as much as district court victors don't get to appeal to the circuit court. So never any due process regarding his detention? No, Your Honor. That can be raised before the IJ. And ultimately, if you are victorious on other issues that moot out your detention claim, perhaps that won't be heard. But that's precisely the case of what would have been the case in Khalil. And in that posture, they recognize that that is absolutely something within the channeling. And I see my time has expired, so I certainly want to be sensitive to that. I'm going to ask my colleague, Judge Harris, do you have some further questions? I do. So as I understand it, and tell me if I'm wrong, on subsection G, you're really making, I think, two arguments. One is just sort of per se, if you're removed – I'm sorry, if you're detained, that's part of the decision to remove you, so it's always covered. The jurisdiction stripping provision always applies. But then I think you have a narrower argument that, well, it certainly applies here because the arguments overlap as to detention and removal. Is that right? Essentially, Your Honor. I think there is a stronger and a weaker form. I don't think even the stronger one reaches all questions of detention. Oh, I know, right, because you have to move around and set about it. Well, I think, for example, conditions of confinement or length of detention is not bound up in the decision to detain you pending removal. That initial decision, whether detained. Okay, I'm sorry. I do have a question about that because on the text, how do you get that distinction? I mean, this provision doesn't talk about detention at all, which is sort of your colleague's argument. How do you find in this statute – they both arise from the decision to remove in that that is the but-for cause of why you are in detention. How on the text do I distinguish those two cases? Certainly, Your Honor. And I think there's two different components. They vary based on both the strong and weak version that Your Honor identified. And so the 1252G – I'm sorry. I'm just trying – because I don't want to take too much of my colleague's time or your time. But you said conditions of confinement, length of detention, those are different. And I'm just asking you on the text what makes them different. Your Honor, two reasons. First of all, 1252G applies to three narrow categories. The commencement is one. When you commence removal proceedings, you have to either detain or not detain. Those are binary choices. You have to make one or the other. And so the choice to detain pending removal proceedings that's made at the time of commencement is bound up in it. That's exactly what the Eleventh Circuit has held in the Alvarez case. And, indeed, the Genin plurality has language very strongly on that. It says where it recognizes that the, quote, decision to detain the alien in the first place or seek removal, end quote, would be bound up in the B9 bar. But then I think there's a second version, too, Your Honor, which is separately here that is presented by the somewhat unique challenge that Mr. Suri and Mr. Khalil and others have made, where all of the challenges they're making, the constitutional challenges, apply equally to removal and detention. So you cannot raise their claims about detention without also necessarily, you know, getting a decision that removal would also be invalid. And so it's bound up. One last point. Or ask one last question, I should say. I mean, you say it's because the petitioner's claims are the same. But I'm guessing from his perspective, it's just because the government is doing the same unlawful thing twice, right? If the government hypothetically had some practice or policy where it said it's targeting for pre-removal detention non-citizens of a particular religion, if we're going to remove you and you are, say, Muslim, then we will also detain you. So maybe that you could bring a habeas petition for because there's no overlap between your removal arguments and your detention arguments. But then if the government doubles down and says, you know what, we're also going to target you for removal on that ground, now all of a sudden you can't bring a habeas petition. And that seems like probably not what Congress intended here. So can you tell me why I should think that is what Congress wanted the result to be? That if the government does it twice, it's off limits, but if you only do it once, you can bring a habeas petition? Because Congress went to the trouble of precluding outright under 1252G challenges to removal. But not challenges to detention. Three things and detention is not one. But much like habeas itself, where 1983 exists separately, generally as a cause of action, but where something can be brought in habeas, it must be brought in habeas. And that's a very robust principle. It's in Heck v. Humphrey, it's in the JGG case. Much like that principle, 1252 recognizes that, you know, if it can be brought before an IJ, it must be, as well as in A5 and B9. And the Tazu case makes this quite explicit, where they say that because the claims to detention and removal are exactly parallel and apply to both, the 1252G bar, as well as the A5 and B9 bar. Let me ask you this, though, but it seems as if Mr. Suri's argument is that detention violates his First Amendment right and due process right. We agree that the claims he's made, but they pled that both detention and removal on that basis both violate the First Amendment and the due process clauses. Wouldn't that be more appropriate for habeas? Not where they're parallel. Where the Third Circuit recognized in Khalil that where they're parallel and it can be brought through a PFR, it must be brought through a PFR. And that's a channeling provision. It ultimately goes to the courts of appeals like this court, but it does not, it skips the district court. Congress has channeled that through an unmistakable zipper clause, as the Supreme Court has recognized, and that's not a preclusion of Article III review. It's just a channeling provision that it gets there only through a PFR and not through habeas. Well, I have a question about, that Judge Harris raised about what is the, is there a textual basis for separating a conditions claim from the claim that was brought here? And I'm wondering if the textual basis is lodged in those terms arising from that some of these other claims that are raised, different claims and conditions claims and everything, would be much less likely to arise from the Attorney General's decision to commence proceedings. Whereas what happened here is clearly something that arises from the Attorney General's decision to commence proceedings. So I think when you look at those two words, arising from, you can see that some of the collateral questions are much less likely to arise from the Attorney General's decision to commence proceedings than the question here, which is a direct result of, the detention is a direct result of the decision to commence proceedings. But am I correct in the fact that the narrower ground is available to us in the sense that this clearly arises from the Attorney General's decision to commence proceedings, but that many of these other suits that one can perceive are much less likely to do so? Because I'm not interested in having some broad sweeping ruling that shuts off habeas, but I do think there's a basis in the text for narrowing the situation. It's not to the petitioner's advantage that these claims are exactly the same in both forms. Do you see what I'm saying about the textual basis? I do, Your Honor. I certainly agree with that position, and I'd also add the additional rationale that different decisions are not swept in. If you have a condition… How does it directly, I mean, detention wasn't mandatory in this case, right? It's not as though by commencing proceedings, it follows that this person will be detained. Your Honor, I believe detention is mandatory under the foreign policy charge, although… Oh, you're sure of that? I am 80% sure of it, and I will quickly correct the Court if I'm wrong about that, and I'm sure opposing counsel can… I feel like that probably makes a big difference in this case. Okay, but if you're telling me it's mandatory, that's something I was not aware of. In addition, Your Honor, I think the 11th Circuit decision in Alvarez recognizes that it doesn't make a difference, that the decision to detain when commencement of removal charges are commenced falls within it. And then, if I can, there's another rationale for why that falls within it, but conditions of confinement or length of detention would not, which is that no matter how you resolve the conditions of confinement or length of confinement, it would never imply the invalidity of the decision to initiate removal proceedings. But here, when you decide the claims that Mr. Suri is presenting, sorry, Dr. Suri is presenting, if you ruled for them, they would necessarily imply the invalidity of initiating and commencing removal proceedings, and that's an additional reason why the 1252G bar applies here. I want to make sure. Did you say that you thought detention was mandatory in this situation? That's my understanding, Your Honor. It hasn't been a live issue. Why would it be mandatory? I believe because it is the foreign policy charge. I believe detention is mandatory under that. The 2nd Circuit thought it wasn't. I think the… Shoot, I can't remember where the other circuits are. It may be that a lot of courts have been getting this wrong, in which case maybe you can submit a letter or something and explain why. We'd be happy to, Your Honor. I know Osterk is different, for example, because that was a visa revocation case. That falls under 1226A in which bond is available. I believe, and let me check quickly with my colleagues, that this case involves the foreign policy charge rather than a visa revocation, and so I believe detention is mandatory under it. I want to double-check that, and certainly we don't think that distinction makes a difference because, for example, the Alvarez case and the language I quoted from Jennings. But I will certainly confer with colleagues and correct to the court if it is not, in fact, mandatory. Thank you very much. We'd like to hear from Mr. Farr. It will be a pleasure to hear from you. Good morning. May it please the Court. Nour Zafar for Petitioner Bader Khansouri, who is here with us today. I will address the INA and Alritz Act, and my colleague, Ms. Greenspan, will address habeas jurisdiction. The government comes before this court with an extraordinary argument, that it should be able to arrest non-citizens for their pro-Palestine speech, detain them for as long as it wants to censor this speech, and deny them any judicial forum to seek prompt release. But Congress did not intend, and the Constitution does not allow, the government to use the immigration detention system to implement a policy of censorship. The statutory text, as construed by the Supreme Court in Jennings, and core First Amendment principles, require habeas review of executive detention here. Your statement implies that Mr. Seery will not be getting any kind of review if it doesn't come through habeas proceedings. But that's not correct, is it? Because the immigration proceedings will allow a challenge to an order of the BIA, and Congress has specifically authorized the Courts of Appeal to review constitutional claims when they review an order of the BIA. So, one way or another, Mr. Seery is going to get a review. It may not come as quickly as you want, and you may think that review in the removal context is less desirable than in the habeas context. But the point is, there is an avenue for review of the very First Amendment claim that you regard, understandably, as important. You're going to have the review. Your Honor, that review would come too late to offer meaningful relief to Dr. Seery. The key phrase in B9 is arising from, and claims that cannot get effective review on a petition for review do not arise from an action taken to remove an alien. Here, Dr. Seery will have to wait months, years, you know, to get review on a PFR, and he may never get that review if there isn't a final order issued. But isn't that something that Congress took into account when it passed the jurisdiction stripping statutes? It obviously, in passing these two jurisdiction statutes, weighed the various merits and demerits of habeas review versus review for the removal BIA process. And it decided, after weighing those respective merits and demerits, that a broad jurisdictional statute, stripping statute, was desirable. Your Honor, Congress's purpose in enacting B9 was to zip up claims that arise from removal into the PFR. It did not mean to bar claims that do not fit into that process to begin with. And certainly, if you look at the purpose of Congress in enacting these statutes, it could not have intended for an individual who is alleging that his detention is retaliatory and is predicated on his protected speech for that person to have those harms come to pass before they can get review of the both First Amendment and unlawful detention claims. That's simply not what Congress was intending with B9. I mean, the court pretty – well, the plurality pretty much says that in Jennings, right, when they say it would be effectively unreviewable if a detention claim couldn't be heard until after the person's detention was finished. Correct, Your Honor. And Jennings emphasizes that the arising from phrase must be construed narrowly, particularly to avoid extreme results such as what we would have here, where the injury that somebody is complaining of would come to pass and would not be remediable on a PFR. And that's exactly the case with Dr. Suri's First Amendment injury. How do you deal with the language in 1252 B9 that explicitly says, no court shall have jurisdiction by habeas corpus? There's an explicit reference to habeas corpus in the jurisdiction stripping provision. And doesn't that apply here, that the habeas review was one of those things that in both explicit terms in 1252 G and in 1252 B9, habeas corpus is mentioned as an example of a review that is unavailable? I mean, that's in the text of both of these jurisdiction stripping provisions. If Congress did not want habeas review and it anticipated this very problem might arise and it makes specific reference to the unavailability of habeas review in these two statutes. Your Honor, that reference to habeas review is habeas review of removal orders. And that's precisely the concern that Congress was addressing through insertion of that language. Because prior, what you would have is people who would get final orders and they would seek review of those orders, both in habeas in a district court and on a PFR. And Congress wanted to make the PFR the exclusive forum for review of final orders and it wanted to zip up all claims that arise from removal into that PFR process. But Congress did not intend to bar unlawful detention claims and certainly did not intend to bar unlawful detention claims where the government is using detention to censor First Amendment protective speech. Can I ask you just a practical question? I mean, what we've been talking about is I think an argument that just practically speaking these claims would be non-reviewable if they had to wait for PFR. But there are, I think, these practical concerns on the other side about dueling or conflicting orders from different circuits so that you could end up in a situation where you might have an order from this circuit on review of this, when the district court issues a final ruling on habeas, you could have this circuit saying, okay, this was unconstitutional First Amendment retaliation, but then on review of the PFR in some other circuit, the court coming out differently. I mean, how do you address that kind of practical concern about conflicting orders? So it certainly is possible that there could be some preclusion issues, but that's not a given. So, for example, in the removal hearing, the government may argue that it is owed extreme deference with respect to whether somebody poses a foreign policy threat. It may argue that it's a political question that courts can't review in the first place. So it's unclear how a court would weigh those concerns against the weighty First Amendment concerns. And the review may look very different with respect to detention claims, which are the only claims at issue here. So while it's certainly possible there may be preclusion, that's not a foregone conclusion. But even if there is preclusion, that's just the price of the First Amendment and the suspension clause, because Congress could not have intended through B-9 to bar review of unlawful detention claims where the government is censoring speech. What happens as a practical matter, not only if there's all sorts of splits, as my good colleague points out, but suppose the removal process, the immigration process, and the habeas process come to directly contradictory views on the First Amendment question. I mean, whose views take precedent? It doesn't seem to me that your argument is enhanced by the fact that we were dealing here with the very same First Amendment claim in the habeas proceeding and in the removal proceeding, which raises the specter of duplication, parallel proceedings, contradictory rulings, and everything. And what do we do when the habeas court says I find merit in the First Amendment claim and an appellate court reviewing a BIA order says there is no merit to it at all? What do we do in a contradictory situation such as that? So with respect to Dr. Suri's case, because his habeas proceedings and his removal proceedings are both in the Fourth Circuit, this court would be considering both of those issues coming up, so there may be less of a basis for that sort of conflict. But again, I acknowledge that our position may lead to some administrative inefficiencies, but the government's position is simply constitutionally intolerable. It is basically saying that any time it decides to seek someone's removal and detain them for the same reason that it can deny any habeas review, even if that detention— No, but wasn't it those—and I appreciate your candor. You say your position will lead to some administrative inefficiencies, and I think that sort of downplays the complications and delays and everything that would arise, but wasn't it those very kinds of administrative inefficiencies that you rightly concede would be part and parcel of your position? Wasn't that the very thing that Congress wanted to avoid by its explicit references to habeas in both 1252G and 1252B9? That's exactly those very administrative inefficiencies that you rightly agree would adhere in your position. That's exactly what Congress wished to avoid, was it not? Your Honor, that is part of what Congress was trying to do with respect to removal claims, not necessarily with respect to unlawful detention claims. And again, Congress's purpose in enacting B9 simply could not have been to permit the government to use the immigration detention scheme to censor First Amendment-protected speech. That's just simply not something that Congress could have contemplated. While we're on this, can you tell us anything about what is going on with Dr. Suri's removal proceedings, where those stand? Yes, Your Honor. He has an individual hearing scheduled for June 1st, and so the immigration judge has found that he cannot look behind the Secretary of State's determination that Dr. Suri poses a foreign policy threat. He determined that it's patiently valid, and under binding BIA precedent, he can't probe that further. But the immigration judge is accepting additional evidence, and there's a hearing scheduled for June 1st. I would just like to correct something that my colleague said about the nature of Dr. Suri's detention here. Dr. Suri is being detained under the permissive detention statute at 1226A, and under that statute, the government may but is not required to detain someone. Now, because Dr. Suri is being charged under the foreign policy ground, he does not have access to a bond hearing before an immigration judge. So he effectively has no way to obtain review of his detention other than a habeas corpus. And just quickly, I'd like to address two additional arguments. First, with respect to whether B-9 applies pre-final order. This circuit's precedent in Casa de Maryland makes very clear that B-9 only applies once there's a final order of removal. And with respect to 1252G, the Supreme Court in ABC said that it is very narrowly limited to those three actions that are listed in the statute. Detention is not one of the listed actions, and detention and commencement of proceedings are two independent, separate decisions. The government does not need to detain everyone who it serves with an NTA and vice versa. How do you deal with the statute 1220, Title 8, 1226A, which says that the statute under which Suri was detained permits, this statute permits arrest and detention pending a decision on whether an alien is to be removed from the United States? And so you get at least a permissive detention here under the language of 1226A. So when you say the government's acting unlawfully here, how can that be when 1226A provides the authority to arrest and detain pending a decision on whether an alien is to be removed? Here, the uncontested facts in the record show that Dr. Suri was targeted for his speech. Petitioner introduced voluminous evidence suggesting, including statements from high-ranking government officials, saying that he was targeted for his social media posts and his protective association. And the government had ample opportunity to dispute those, and it did not do that in the hearings below. So there is no suggestion that he is being detained for any reason other than his protected speech. And, of course, under 1226A, it doesn't have to detain him, and there has been no showing of flight risk or danger here. You've come before us and assumed sort of in a somewhat conclusive fashion that, oh, the First Amendment claim is absolutely meritorious and it would sweep things across the board. And couldn't any petitioner come before us with the same kind of claim that was a constitutional claim and the petitioner would claim it in conclusory fashion to be meritorious and say, well, the habeas jurisdiction must lie? I mean, it seems to me that what you're opening the door to is a conclusory claim of merit right at the outset of a habeas petition, which unlocks the habeas door. So two things here, Your Honor. Again, the government had ample opportunity below to contest that it was taking these actions on something other than his speech, but it did not put forth any evidence to the contrary. That's not something that will happen in the vast majority or any other case. And here the protected speech took place before any of the government's retaliatory action. Now, Your Honor may be suggesting something more similar or along the lines of the Roggebeer case in the Second Circuit where the petitioner there had a valid final order of removal. He was a longstanding advocate for immigrants' rights and he engaged in protected speech and the government chose to execute that order of removal in retaliation for his speech. And there the court actually found that 1252G barred that claim, but then went on to analyze it under the higher outrageousness standards that the Supreme Court put forth in ADC. So that's a very, very high bar to meet if individuals were somehow able to manufacture First Amendment claims after the fact. Thank you, counsel. Judge Harris, did you have further questions? Thank you. All right. You have your co-counsel here that has some time as well, Ms. Greenspan. I'm happy to hear from you. Thank you. Good morning. May it please the Court, Jerry Greenspan, on behalf of Dr. Bader Khan Suri. The district court in this case properly applied the unknown custodian rule and found that it had jurisdiction over Dr. Suri's habeas petition. The court, after giving the government multiple opportunities to present evidence about the circumstances surrounding Dr. Suri's arrest and detention, based its holding on three key factual findings. Number one, Dr. Suri's physical location and immediate custodian were unknown at the time of the filing and could not have been known by reasonably diligent counsel. Number two, that his immediate custodian remained unknown at the time the court ordered Dr. Suri released on bond. And number three, that the government's secret and unusually rapid transfer of Dr. Suri through several locations in Virginia and then out of state in under 24 hours was intended to frustrate Dr. Suri's access to the court and to require him to litigate in the government's preferred quorum. The government does not argue that any of the district court's factual findings were clearly erroneous. However, the government still argues that this case should have been filed in Texas, a position that finds no support either in the habeas statutes or the case law interpreting them. Because Dr. Suri was not and had never been in Texas at the time his habeas petition was filed. Attorney General's made a decision to commence proceedings, to commence removal proceedings. And Suri's habeas petition arises from the Attorney General's decision to commence removal proceedings. And the habeas petition is a challenge to the Attorney General's decision to commence removal proceedings. And why doesn't the language of that statute, 1252G, why isn't this a paradigmatic case to which the language of that statute just flatly applies? Well, Your Honor, I don't think it would, we obviously disagree that any bars from the INA would apply to strip the court of jurisdiction, subject matter jurisdiction in this case, and I'll defer to my colleagues. I know you, I recognize that, and I didn't mean to draw you into something that you felt was your colleague's argument. But I'm just wondering, again, I raised the point earlier, it seems to me that these jurisdiction provisions are fundamental subject matter jurisdiction questions. And that yours lie more in the realm of personal jurisdiction, and I don't understand why the basic subject matter jurisdictional provisions wouldn't take priority and make it unnecessary to address the questions that you're raising. And it doesn't help you that the claims here are the same. The First Amendment claim is the same, which raises the risk of duplication. And if we say, well, these jurisdictional provisions don't apply here, it's hard to see that they might apply anywhere. And I just, you've got on the one hand 1252G, which seems to move the district courts out of the equation, and then you've got 1252B9, which moves the appellate courts in. And surely the combined force of these two provisions, these two jurisdictional provisions, and in addition, all the different statutes that are sprinkled through Title VIII, which are aimed at the very same end. It seems to me that the combined force of these two jurisdiction stripping provisions are greater even than the force of either alone, although either alone seems to apply. But when you're dealing with the combination of two jurisdictional provisions, stripping provisions, which are complementary in their coverage, and then you add to those 1226A and other statutes, I think 1252A5, which says the PFR shall be the sole and exclusive means for obtaining judicial review of an order of removal. We're up against not just two statutes that are complementary, but a host of provisions that are sprinkled throughout Title VIII of the United States Code. And do we really want to come up against all that? Well, Your Honor, first off, I'm not sure we entirely disagree with Your Honor's order of operations of addressing subject matter jurisdiction first. But in the event that the court finds that the district court did have subject matter jurisdiction, I think it will be also necessary to reach this question, which the government raised in its appeal of whether the Eastern District of Virginia was the proper venue or jurisdiction to hear the habeas case should the court decide that it could be heard. If the court has additional questions about the INA bars, I'm happy to defer my time to my colleague. Well, actually, just on the hypothetical possibility that some members of this panel will feel compelled to reach this second question, I did have a question about it. I'm struggling with the difference between sort of the unknown custodian exception on the one hand, as we discussed it in Misawi, and then the Justice Kennedy concurrence in Padilla. Can you just – can you help me with that at all? Like, are these two versions of the same exception? Are they different? Is one narrower than the other? How do I think about the two of these two things together? Yes, Your Honor. So the unknown custodian exception, as Your Honor recognized, was adopted by this court in Misawi and applied in that case, and also by this court – and I see my time is up. I'll try to be brief. But also by this court in the opinion on the government's stay motion to essentially excuse the failure of a petitioner to name their immediate custodian in a habeas petition and to excuse the failure to file in the district of confinement when those things are unknown. And so this is motivation neutral, essentially. It's a matter of impossibility, as the Supreme Court characterized it in Padilla when sort of explaining that this was one exception. But when the default rules of habeas jurisdiction are impossible to apply for any reason because you don't know who the immediate custodian is, you don't know where the person is detained, then the unknown custodian exception applies and allows the person to name their ultimate custodian, and in this case, to file in the last known district of detention, where Dr. Suri's counsel reasonably believed him to be at the time of filing. And once the court obtains jurisdiction over the habeas petition by applying these exceptions, then it retains jurisdiction to hear the case. I think Justice Kennedy's proposed exceptions from his concurrence in Padilla go slightly further. I don't think it's necessary to go there in this case. I think the unknown custodian establishes that jurisdiction was proper in the Eastern District. But Justice Kennedy also postulated that in situations where the government was detaining somebody and was rapidly moving them around so it was difficult for the filing to catch up, you know, possibly with the intention of thwarting the detainee's access to the court's access to habeas, that could be an exception. I don't mean to discount your argument on the governmental misconduct of the unknown custodian points. I think you've got some good points to make there. The district court made findings of fact there, and the findings of fact went in your favor. And I respect district court findings of fact, and I respect all that's said about this exception in Musawi and other things. So I'm open and receptive to that, but I don't understand what difference it makes in light of these jurisdictional provisions. It's a point that I'm sympathetic to, but I just don't understand how to get to it in light of this wall of statutes that says we don't have jurisdiction to review the appeal from this particular habeas proceeding. And the district court didn't have habeas jurisdiction. And if the district court didn't have habeas jurisdiction, that just ends the case. That's it. You've got to prevail on all the different points, not just the unknown custodian exception, but also the jurisdictional stripping exception, in order to win. And if one of those issues goes against you, that ends the case. And I say I'm well over time, but if I may just respond briefly, Your Honor. Yeah, sure. I think the overarching concerns that the district court was looking at in this case, and that are present in determining which is the proper venue to hear the case in terms of habeas jurisdiction, are concerns about access to habeas, the importance of the great writ in our constitutional system, the very serious constitutional violations that Dr. Suri was alleging and the government did not contest, and the need to view the rules of habeas jurisdiction in such a way that access to habeas and access to the courts are not precluded, especially when the detention is won by executive order. I think the Supreme Court has reiterated that time and again. I understand that you do not believe that constitutional review of a BIA order is as desirable as federal court constitutional review of a habeas proceeding. You'd rather have it go through federal court because you just like the procedure better and the way that the record is assembled, and you prefer that and the options that are available to you in habeas before a federal judge. But isn't that the very thing that Congress weighed before it passed these jurisdictional statutes that explicitly excluded habeas? Didn't it weigh the respective merits of appeal through the federal court system and appeal from habeas as opposed to going through the immigration process and say, yes, we understand the pros and we understand the cons? And then it came down to the expression that we find in Title VIII, throughout Title VIII. And so I wonder whether I understand why you don't prefer judicial review of a final BIA order, but the reasons you prefer or may not prefer aren't those policy arguments that Congress would have a chance and the opportunity to review. Your Honor, again, I'll defer to my colleague's argument on these points and would ask that my colleague be able to address the court's question or has remaining questions. Come on up. You want to make a point there, we're going to give you a chance to make a point. This is your part of the argument and it's fascinating and we'd like to hear what you have to say. Yes, sure, Your Honor. So just with respect to what Congress was doing with 1252, I want to point out that 1252 nowhere mentions detention. And in fact, the only reference to detention and limitations on review of detention actually happens in Section 1226, which is the detention statute. And there at 1226E, Congress restricts review of discretionary decisions made by the executive with respect to individualized detention actions. But 1252 is all about orders of removal and issues that come up as part of the removal proceedings. And B-9 functions as a zipper clause to zip up those issues. 1252A-5 talks about, for example, the fact that a final order is the appropriate place for review. So if you look at that statute as a whole, the jurisdiction stripping provisions apply only with respect to removal proceedings and issues that arise in those. Thank you. Thank you. I want to make sure that everybody has a chance to get their case out. Now we'd like to hear from Mr. Ensign. You have some rebuttal time, sir. Thank you, Your Honors. Five quick points, if I might. First, Dr. Suri does not deny that he can obtain review of his claims through the IJs and ultimately circuit courts through a PFR. He prefers otherwise, but that's simply a policy choice that Congress has made. Prefer seems like you might prefer things for any number of reasons. There is something, the idea that you can be detained for years and then good news, like at the end of that years-long detention period, you can get review of whether for the last several years you've been illegally detained. I mean, I feel like that goes beyond sort of personal preference. And the court does talk about this in Jennings and say, like, that makes it effectively unreviewable, the fact that you can't get review of the detention while the detention is happening. Your Honor, we recognize it's not simply personal preference, but we think that the Third Circuit's decision in Khalil on this is very instructive. Can I ask you, because you keep referring to Khalil and we have Jennings. What is, I mean, do you just, Jennings doesn't apply here? I mean, because any, you have not addressed Jennings. The court is, I mean, we have a Supreme Court decision and you keep referencing Khalil, which is a Third Circuit opinion. Certainly, Your Honor, we think, you know, we think Khalil has a better reading of Jennings, but we think Jennings actually controls here. In fact, the Third Circuit thought Jennings so clearly controlled the question of whether or not you need a final order of removal that it overruled prior existing Third Circuit precedent as completely irreconcilable with Jennings. This is the part where Jennings says, I'm going to get this wrong because of the logical fallacy thing, it's that if these three things are not true, then jurisdiction is not stripped. But your view is that if one of them is true, then jurisdiction is stripped. Sorry, is this G or B-9? B-9. B-9. I think that maybe the simpler way is just as the plurality recognizes the quote, decision to detain the alien in the first place, end quote, is something that they thought would fall within the B-9. Where does it say that? That is Jennings 583. It says if the initial, if you're a challenge to the initial decision to detain is what is that issue, we think that falls within B-9. You think I'm going to find a sentence like that in Jennings? Very close to it, Your Honor. What you're going to find is they distinguish the circumstance at issue in Jennings from circumstance where it is the decision to detain the alien in the first place. And in drawing that distinction, they strongly imply that B-9 would govern that circumstance. And, indeed, the Third Circuit recognizing clearly that that was sufficiently a strong enough reasoning that, you know, assembling it under Marx, it overruled contrary precedent of the Third Circuit as well. Second, they acknowledge potential preclusion here that, you know, I think that's an admiral and candid admission, but it makes clear that that is absolutely what Congress wanted to avoid. When it channels provisions to particular courts, if other courts can decide the issue and have preclusive effect, you have now completely thwarted Congress's channeling intent. It could not get any closer. And third, if I could, to Your Honor's concern about delay, the Third Circuit clearly recognizes that as well. You know, in the criminal context, for example. In the criminal context, someone has been convicted. There's a final conviction. Skye, there's no conviction here. There's no court, no Article III court has approved this detention. I don't see how the criminal context is relevant here. Sir, I think that the Third Circuit, that it's instructive here that sometimes habeas has to wait. Why? Because you've already been convicted, and it's a presumptively constitutional conviction. There's been no review here. That seems wildly different to me. I don't believe so. I certainly acknowledge there has not been a conviction here, but I think that the jurisdictional bars that Congress has imposed is of the same like, that preclude habeas, and that habeas might be delayed either because of exhaustion requirements or jurisdictional surfing requirements. It's simply that something Congress has said. It's a little bit different if someone can just pull you off the street and put you in jail, and no court gets to look at that. I don't know how you can compare that to you have been convicted through a constitutionally regular proceeding, and now you think you have a challenge to that conviction. I mean, the level of protection that's been offered is just radically different. Your Honor, I think that's inherent when Congress went to the trouble of specifically identifying the habeas statute as one whose jurisdiction was precluded under B-9. It identified habeas and said it was precluded. I understand your statutory argument. I'm just saying I'm not finding a lot of comfort in the comparison to criminal proceedings post-conviction. I understand that, Your Honor. But the two statutes here, the jurisdictional statutes, simply as a textual matter, do not turn on the existence of the unknown of a conviction. That's correct, Your Honor. We have to find here what the statute said. We have to go by the text of the statute, and the text of the statute simply does not turn on the fact or not of a conviction. Now, habeas proceedings come into play in this circumstance if the government decides to prosecute and the government obtains a conviction. Then there's an appeal of that conviction, and there's collateral review of that conviction, and that will all be before a habeas court. But where we are talking about an alien and we're talking about the process of removal, the authority that the executive branch of government exercises in this whole area is one that Congress had the ability and the authority to legislate in the manner that it did under 1252G and V-9. And as you point out, this is not a question of where habeas is suspended. The suspension clause doesn't apply here because there is an opportunity for review, not the preferred opportunity that a petitioner has, but the bottom line is that the petitioner here is going to get due process, is going to get a review of the constitutional claim, is going to have the first of the arguments, pro and con of the constitutional claim, one way or another, either through the normal criminal justice process or through the removal process. There's going to be a review of that claim, and due process is going to be provided. And if that's the case, we've just got to stick to the wording of these statutes. Your Honor, I certainly agree. Review here is not suspended. It's merely channeled, and that is precisely what Congress intended. Do we know where we are on whether this detention is mandatory? Your Honor, let me dig. It's a bit messier, if I may. If it is not, in fact, mandatory, we will promptly inform the court of that. I'm sorry, I just thought maybe you would consult it. Okay. And the district court granted bond, you can do that when detention is mandatory? It would be mandatory within the IJ context. The Second Circuit in the MAP case recognizes the availability to grant bond pending habeas in the immigration context. We believe that's wrongly decided, but that is what the Second Circuit says. Did you argue in the district court, like, hey, this detention is mandatory, nobody's going anywhere? I don't believe we did, Your Honor. Okay. If I may, two very quick final points. I can do it in under a minute, if I can beg your indulgence. This is quick. Absolutely, Your Honor. First, I heard no denial at all that an affirmance here would cause a square split with the Eleventh Circuit in Alvarez and Third Circuit in Khalil and Tadu. I don't think there's any way to avoid that. That is necessarily what an affirmance would cause. And second, on the unknown custodian exception, I think even if it applied, Khalil is very instructive on how it would apply here, and then you would still improper. There, they applied the unknown custodian exception and said wherever the petitioner was when the petition was filed, that was the court that has habeas jurisdiction, and we transferred there. You know, what I find interesting is that Dr. Suri, the government knew that they intended to send him to Texas, right? Because his paperwork said from the beginning, but nowhere in the locator, there's nothing in there that says that he's assigned to Texas, he has a hearing in Texas on May 6th. I disagree, Your Honor. The NTA has both identified his location of detention, and it also gave the location of his IJ hearing, which was also in Texas, that was served on Dr. Suri. But it was not placed in the locator. The locator is not in real-time data. It sometimes lags behind, sometimes by hours. But nonetheless, he had actual knowledge through his NTA of both his detention would be in Texas, and that his hearing before an IJ would also be in Texas. But how is his attorney filing his habeas petition supposed to know that if it was not in the locator? Dr. Suri could have told his attorney those facts, and in any event... The government gave him a phone call? He had a phone call with his wife who could have. Initially, when he was in Virginia. Before he was served with the NTA. I believe he had the NTA, but at that time, I'm not positive. I believe he did. In any event, I think it wouldn't matter what his counsel knew. Specifically, that was the position of the dissent in Padilla, which the majority recognized the knowledge of counsel cannot be controlling. They specifically rejected that in footnote 17 of the Padilla decision. So the applicable question is not what counsel knew. And again, even if the unknown custodian exception applied here, that would only mean that you get where you were detained at that time. And that's why the Third Circuit said that venue was properly in the District of New Jersey because Mr. Khalil was detained. Did you ask the District Court to transfer the case to Louisiana? We certainly argued that jurisdiction was improper in the District Court, which I think... Right, but did you say what you're saying today? Following the Third Circuit, this case should be in Louisiana? Not specifically, Your Honor. The Khalil decision did not exist. Well, I know, but I guess what I'm getting at is didn't you waive this argument in the District Court? If this is supposed to be in Louisiana, shouldn't you have told the District Court this case should be in Louisiana? Your Honor, at JA, I believe 166, we said that jurisdiction was improper in the District of Virginia. And said regardless of whether it should be in Texas or Louisiana, it's not proper in Virginia. Sorry, I know your time. I just remembered, can I ask one last question? I just wanted to make sure, just so I understand the posture, you are not arguing on appeal. You are not challenging the District Court's judgment that Dr. Suri is likely to prevail on his constitutional claims, right? You're only arguing jurisdiction? Your Honor, we are only making jurisdictional arguments. I don't think that there actually is such a determination here. The release was granted on non-merits factors, and the all-over-its-act order was also based on it. It may have affected the District Court's views, but there was never an injunction that was issued, you know, applying the winter factor saying you are likely to prevail on the merits of the constitutional claim. The District Court didn't say he was likely to prevail on the merits? Not in anything that actually determined the orders that he did, or she did, excuse me. I'm sorry. So you're saying it doesn't show up in the written order? I'm not saying it doesn't show up there. I'm saying that the orders that are on appeal are not based on it, and it wasn't done in the sort of predictive way that you would expect of like, I'm going to issue a preliminary injunction, I'm going to analyze likely success in the merits. That does not exist below. There's no further questions? Thank you very much, Your Honors. Hold on a second. Let me ask my colleagues if they have further questions. Judge Benjamin, do you have any further questions? No. Judge Harris, do you have any further questions? No. Would you like to take a recess, or would you like to go into the next case? I'm fine either way. Pardon? I'm fine either way. Okay. We'll come down, and I want to thank all of you for a very interesting argument, and I really appreciate the preparation that everyone has put into the presentation of the case. And we'll come down and greet counsel, and then we'll proceed directly into our next case. Thank you, Your Honors. Thank you.
judges: J. Harvie Wilkinson III, Pamela A. Harris, DeAndrea Gist Benjamin